E-FILED
Wednesday, 30 June, 2021  02:20:02 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS,
## SPRINGFIELD DIVISION

| | |
|---|---|
| AMCO INSURANCE COMPANY, An Ohio Corporation; and DEPOSITORS INSURANCE COMPANY, an Iowa Corporation, | ) ) ) ) ) |
| Plaintiffs, | ) ) |  Case No.  21-3143 |
| v. | ) ) |
| CHRONISTER OIL COMPANY, an Illinois Corporation; and APRIL MOHN; | ) ) ) |
| Defendants. | ) |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, AMCO INSURANCE COMPANY, an Iowa Corporation, and DEPOSITORS

INSURANCE COMPANY, an Iowa Corporation, by and through their attorneys, MEAGHER &

GEER, P.L.L.P., state the following as their Complaint for Declaratory Judgment, pursuant to 28

U.S.C. § 2201 and Fed. R. Civ. P. 57, against Defendants, CHRONISTER OIL COMPANY, an

Illinois Corporation, and APRIL MOHN:

### Introduction

1.      This is a Declaratory Judgment action to obtain a declaration of the rights and obligations

under insurance policies issued by Plaintiffs, AMCO Insurance Company and Depositors Insurance

Company to Defendant, Chronister Oil Company.  The policies at issue include a commercial general

liability policy, a commercial umbrella policy, and a workers compensation and employers liability

(collectively "the Policies").  Plaintiffs seek a declaration from this Court regarding the extent of the their

rights and obligations, if any, under the Policies for the allegations in the lawsuit entitled, *April Mohn, on

behalf of herself others persons similarly situated v. Chronister Oil Company*, Case No. 2020 L 000249,

filed in the Circuit Court of Sangamon County, State of Illinois (the "Underlying Complaint").  (A copy of the Underlying Complaint is attached as Exhibit A.)

2.      Plaintiffs seek a declaration from this Court that they owe no obligation under their respective policies to defend and/or to indemnify Chronister with regard to the allegations in the Complaint.

### Jurisdiction and Venue

3.      Plaintiff, AMCO Insurance Company ("AMCO"), is an insurance company with its principal place of business in Des Moines, Iowa and was authorized to issue policies of insurance in the state of Illinois.

4.      Plaintiff, Depositors Insurance Company ("Depositors"), is an insurance company with its principal place of business in Des Moines, Iowa and was authorized to issue policies of insurance in the state of Illinois.

5.      Defendant, Chronister Oil Company ("Chronister"), is a corporation organized under the laws of Illinois, and maintains its principle place of business in Springfield, Sangamon County, Illinois.  Chronister owns and operates numerous gas stations and convenience stores located in Springfield, Illinois and throughout Central Illinois.  Chronister is a named insured under the commercial general liability and the commercial umbrella insurance policies issued by AMCO, which are at issue and further described in this Complaint.

6.      Defendant, April Mohn ("Mohn"), is a resident and citizen of Illinois. Plaintiff names Mohn as a potentially interested party by virtue of her status as the named plaintiff and putative class representative in the Underlying Complaint.  No affirmative relief is sought against Mohn.

7.      The allegations in the Underlying Complaint all arose from events that occurred at Chronister's gas stations and convenience stores located in Springfield, Illinois and

other cities in Central Illinois, including the cities of Bloomington, Normal, Lincoln, Jacksonville, Pana and Shelbyville.

8.     Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiffs, AMCO and Depositors, on the one hand, and Defendants, Chronister and Mohn, on the other hand; and (b) the amount in controversy, including the potential cost of defending and indemnifying Chronister in the Underlying Lawsuit well exceeds $75,000.

9.     Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this lawsuit occurred in this District, including where the Plaintiffs' Policies were issued and delivered, where the statutory violations alleged in the Underlying Complaint occurred, and where the underlying lawsuit is pending.

10.     An actual justiciable controversy exists between Plaintiffs, on the one hand, and Chronister, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

### The Underlying Putative Class Action Lawsuit

11.     Defendant Mohn has brought a putative class action complaint directed against Chronister entitled, *April Mohn, individually, and on behalf of all others similarly situated, v. Chronister Oil Company*, Case No. 2020 L 000249, filed in the in the Circuit Court of the Seventh Judicial District, Sangamon County, State of Illinois (the "Underlying Complaint"). (Exhibit A.)  The Underlying complaint alleges two counts, both of which allege violations of the Illinois Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq*.].

12.     The Underlying Complaint alleges that April Mohn, as the putative class representative, was employed by Chronister beginning in "late-2016 [ ] until the middle of 2018." (Exhibit A, ¶ 12).

13.     The Underlying Complaint seeks to certify a purported class that is defined as "all individuals (1) who are Illinois citizens and (2) whose fingerprints Defendant collected or stored." (Exhibit A, ¶¶ 29-30).

14.     The Underlying Complaint alleges that Chronister violated BIPA in the following ways:

(a)     Requiring the plaintiff and purported class members to provide their digital fingerprint biometric data, which Chronister "recorded, obtained, collected and/or stored" for use of the "fingerprint scanning machine" that the class members were required to use when clocking in and out of work;

(b)     Failed to notify and disclose to the employee class members in writing the purpose of collecting their biometric data, where their biometric data was being stored, for how long, whether it "shar[ed], disclos[ed] or otherwise disseminat[ed]" their biometric data to any third-parties and, if so, the identity of any such third-parties;

(c)     "Fail[ed] to develop and/or make public its written policy to Plaintiff and class members";

(d)     Failed to obtain the written consent required by BIPA before collecting, obtaining and storing the class members' biometric data; and

(e)     Failed to store class members biometric data "using the reasonable standard of care within its industry"

(Exhibit A, ¶¶ 3-4, 5, 18-27, 33-36, 42-45).

15.     The Underlying Complaint seeks statutory damages available under BIPA to Mohn and each putative class member, including $1,000 per negligent violation, $5,000 per intentional or reckless violation, punitive damages, attorneys' fees' and costs.  (Exhibit A, ¶¶ 38 and Prayer for Relief).

### The Commercial General Liability Policy

16.     AMCO issued to Chronister a Commercial General Liability Policy ("CGL"), No. ACP GLAO 7153843840, effective February 1, 2016 and renewed annually up through February 1, 2020, with limits of $1 million for each occurrence, $1 million for personal and advertising injury, and $2 million in the general aggregate.  Depositors issued identical CGL policies to Chronister beginning with the renewal CGL policy effective 2/1/2020 and renewed annually up through the date of this filing.  The relevant forms and endorsements included with each renewal CGL are identical to the first issued CGL policy effective 2/1/16.  (A copy of the AMCO CGL Policy for 2/1/16 through 2/1/17 is attached hereto and made a part hereof as Exhibit "B"; the renewal CGL policy for the period 2/1/17 through 2/1/18, policy no. 7163843840, as Exhibit "C"; the renewal policy for the period 2/1/18 through 2/1/19, policy no. 7173843840 as Exhibit "D"; the renewal policy for the period 2/1/19 through 2/1/20, policy no. 7183843840 as Exhibit "E"; the renewal policy for the period 2/1/20 through 2/1/21, policy no. 7193843840 as Exhibit "F"; and the renewal policy for the period 2/1/21 through 2/1/22, policy no. 7103843840 as Exhibit "G").

17.     The CGL Policy provides, in relevant part, as follows:

**COMMERCIAL GENERAL LIABILITY**
**CG 00 01 04 13**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II. Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Please refer to Section V. Definitions.

**SECTION I. COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C. No other obligation or liability to pay sums or perform ads or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee"

knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

[ . . . ]

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2.   EXCLUSIONS**
This insurance does not apply to:

[ . . . ]

**e.   Employer's Liability**
"Bodily injury" to:

(1)  An "employee" of the insured arising out of and in the course of:

(a)  Employment by the insured; or

(b)  Performing duties related to the conduct of the insured's business; or

[. . .]

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

[. . .]

**q.   Recording and Distribution Of Material In Violation Of Law**
"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

[ . . . ]

(4)     Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

[. . . ]

## COVERAGE B — PERSONAL AND ADVERTISING INJURY LIABILITY
### 1. Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1)  The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

(2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. EXCLUSIONS
This insurance does not apply to:

**a.  Knowing Violation Of Rights Of Another**
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

[. . .]

**p.  Recording and Distribution Of Material In Violation Of Law**
"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

[. . .]

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

[. . .]

## SECTION V. DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication;

   [. . .]

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   [. . .]

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   [ . . . ]

22. "Your work":
    a. Means:
       (1) Work or operations performed by you or on your behalf; and

       (2) Materials, parts or equipment furnished in connection with such work or operations.

* * * * *

18.     The following endorsements modified Coverages A and B of the CGL Policies issued by AMCO:

**COMMERCIAL GENERAL LIABILITY**
**CG 21 06 05 14**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I — Coverage A — Bodily Injury and Property Damage Liability** is replaced by the following:

**2. Exclusions**
This insurance does not apply to:

**p.  Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications

software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – COVERAGE B – Personal and Advertising Injury Liability**:

**2. Exclusions**
This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**All terms and conditions of this policy apply unless modified by this endorsement.**

* * * * *

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2**., **Exclusions** of **Section I** — **Coverage A** — **Bodily Injury And Property Damage Liability**:

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

[. . .]

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

[. . .]

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2**., **Exclusions** of **Section I — Coverage B — Personal and Advertising Injury Liability**:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

[. . .]

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

[. . .]

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**All terms and conditions of this policy apply unless modified by this endorsement.**

* * * * *

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL GENERAL LIABILITY
# COVERAGE ENHANCEMENT ENDORSEMENT
# INCLUDING MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

[. . .]

**SECTION V — DEFINITIONS**
1. Definition **3.** is replaced with:
   3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish, mental injury, shock, fright or death resulting from any of these at any time.

* * * * *

## The AMCO Commercial Umbrella Liability Policy

19.     AMCO issued to Chronister a Commercial Umbrella Liability Policy ("Umbrella Policy"), No. ACP CAA 7153843840, effective February 1, 2016 and has been renewed annually up through the date of this filing, with limits of $5 million each occurrence, and other aggregate limit of $5 million.   The relevant forms and endorsements included with each renewal CUL Policy are identical to the first issued CUL Policy effective 2/1/16.  (A copy of the AMCO CUL Policy for the period from 2/1/16 to 2/1/17 is attached hereto and made a part hereof as Exhibits "H"; the renewal CUL policy for the period from 2/1/17 to 2/1/18, policy no. ACP CAA 7163843840, as Exhibit "I"; the renewal CUL policy for the period from 2/1/18 to 2/1/19, policy no. ACP CAA 7173843840, as Exhibit "J"; the renewal CUL policy for the period from 2/1/19 to 2/1/20, policy no. ACP CAA 7183843840, as Exhibit "K"; the renewal CUL policy for the period

from 2/1/20 to 2/1/21, policy no. ACP CAA 7193843840, as Exhibit "L"; and the renewal CUL

policy for the period from 2/1/21 to 2/1/22, policy no. ACP CAA 7103843840, as Exhibit "M").

20. The AMCO Commercial Umbrella Liability Policy provides, in relevant part, as

follows:

UMB 00 02 04 13

## COMMERCIAL UMBRELLA LIABILITY POLICY

Various provisions in this policy restrict coverage. Please read the entire policy and any "underlying insurance" carefully to determine rights, duties and what is covered and not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us", and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks are defined in this policy. These definitions are found in the Definitions section or the specific policy provision where they appear.

**INSURING AGREEMENTS**

**A. Coverage A - Excess Follow Form Liability Insurance**
   **1.** Under Coverage A, we will pay on behalf of the "insured" that part of "loss" covered by this insurance in excess of the total applicable limits of "underlying insurance", provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of "underlying insurance" are, with respect to Coverage A, made a part of this policy except with respect to:
      **a.** any contrary provision contained in this policy; or
      **b.** any provision in this policy for which a similar provision is not contained in "underlying insurance".
   **2.** With respect to the exceptions stated above, the provisions of this policy will apply.
   **3.** The amount we will pay for damages is limited as described in Limits of Insurance.
   **4.** Notwithstanding anything to the contrary contained above, if "underlying insurance" does not cover "loss" for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such "loss".
   **5.** We have no obligation under this insurance with respect to any claim or "suit" settled without our consent.

6. If we are prevented by law from paying on behalf of the "insured" for coverage provided under this insurance, then we will indemnify the "insured".

7. With respect to any coverage provided by "underlying insurance" that is on a claims made basis:

   **a.** this insurance does not apply to "injury or damage" which occurred before the Retroactive Date, if any, shown in the "underlying insurance", or which occurs after the policy period; and

   **b.** the aggregate limit shall not be reinstated on this insurance except by endorsement thereon.

## B. Coverage B - Umbrella Liability Insurance

1. Under Coverage B, we will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" covered by this insurance which takes place during the Policy Period and is caused by an "occurrence". We will pay such damages in excess of the Retained Limit Aggregate specified in the Declarations or the amount payable by "other insurance", whichever is greater.

2. Damages because of "bodily injury" include damages claimed by any person or organization for care or loss of services resulting at any time from "bodily injury".

3. This coverage applies anywhere.

4. The amount we will pay is limited as described in Limits of Insurance.

5. Coverage B will not apply to any loss, claim or "suit" for which insurance is afforded under "underlying insurance" or would have been afforded except for the exhaustion of the limits of insurance of "underlying insurance".

6. We have no obligation under this insurance with respect to any claim or "suit" settled without our consent.

7. If we are prevented by law from paying on behalf of the "insured" for coverage provided under this insurance, then we will indemnify the" insured".

8. This insurance applies to "bodily injury" and "property damage" only if:

   **a.** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **b.** The "bodily injury" or "property damage" occurs during the "policy period"; and

   **c.** Prior to the "policy period", no "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed "insured" or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

9. "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

10. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    a. Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    b. Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    c. Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

11. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the "policy period".

[. . .]

**EXCLUSIONS**

**A. Applicable to Coverage A and Coverage B**

Under Coverage A and Coverage B, this insurance does not apply to:

[. . .]

**8. Employment-related Practices**

"Injury or damage", "bodily injury" or "personal and advertising injury" to:

a. A person arising out of any:

1) Refusal to employ that person;

2) Termination of that person's employment; or

3) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person;

[. . .]

**10. Punitive Damages**

Any punitive or exemplary damages, fines or penalties.

[. . .]

**C. Applicable to Coverage B Only**

Under Coverage B, this insurance does not apply to:

[. . .]

**13. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

[. . .]

**d**. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

[. . .]

**DEFINITIONS**

**A. Applicable to Coverage A and Coverage B**

As used in Coverage A and Coverage B:

[. . .]

**6.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[. . .]

**12.** "Suit" means a civil proceeding in which injuries or damages to which this insurance applies are alleged. [. . .]

**13.** "Underlying insurance" means the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy, including any type of selfinsurance or alternative method by which the "insured" arranges for funding of legal liabilities that affords coverage that this policy covers.

"Underlying insurance" does not include any Extended Reporting Periods on the policies shown in the Declarations. Extended Reporting Periods must be endorsed onto this policy by us.

[. . .]

**16**. "Your work" means:

    **a**.  work or operations performed by you or on your behalf; and

    **b**.  materials, parts or equipment furnished in connection with such work or operations.

    [. . .]

**B**. **Applicable to Coverage A Only**

As used in Coverage A:

[. . .]

**1**.  "Injury or damage" means any injury or damage covered in the applicable "underlying insurance" arising from an "occurrence".

    [. . .]

**B**. **Applicable to Coverage B Only**

As used in Coverage B:

[. . .]

**2**.  "Bodily injury" means physical injury, sickness or disease to a person and, if arising out of the foregoing, mental anguish, mental injury, shock or humiliation, including death at any time resulting therefrom.

    [. . .]

**9**.  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses committed in the course of your business:

    [. . .]

    **e**.  oral or written publication of material that violates a person's right of privacy;

    [. . .]

\* \* \* \* \*

21.    The following endorsements modified Coverages A and B of the Commercial

Umbrella Liability Policies issued by AMCO:

**UMB 70 10 05 14**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** Under **Exclusions A. Applicable to Coverage A and Coverage B**, Exclusion **11.** Electronic Data is replaced by the following:
This insurance does not apply to:
 **1f.** Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability
Damages and "personal and advertising injury" arising out of:
 **a.** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or
 **b.** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **a.** or **b.** above.

However, unless Paragraph **a.** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** For the purposes of this endorsement, the following definitions are added to **Definitions, B. Applicable to Coverage A Only**:
"Advertisement" means a notice that is broadcast or published to the general public or specific  market segments about your goods, products or services for the purpose of attracting customers or supporters.

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses committed in the course of your business:

> [. . .]

> **e**. oral or written publication of material that violates a person's right of privacy;

> [. . .]

**All terms and conditions of this policy apply unless modified by this endorsement.**

## The AMCO Workers Compensation and Employers Liability Policy

22.      AMCO issued to Chronister a Workers Compensation and Employers Liability Policy ("WCEL Policy") to Chronister policy no. ACP WCA 7153843840, effective 2/1/16 to 2/1/17, which was renewed on 2/1/17 under policy no. ACP WCA 7163843840 and expired on 2/1/18.  The relevant forms and endorsements included with the renewal WCEL Policy are identical to the first issued WCEL Policy effective 2/1/16.  (A copy of the AMCO WCEL Policy for the period from 2/1/16 to 2/1/17 is attached hereto and made a part hereof as Exhibit "N"; and the renewal WCEL policy for the period from 2/1/17 to 2/1/18  as Exhibit "O".)

23.      The AMCO WCEL Policy provides, in relevant part, as follows:

**WC 00 00 C 01 15**

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

 [ . . . ]

**PART TWO**
**EMPLOYERS LIABILITY INSURANCE**

**A. How This Insurance Applies**
This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.
1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.
3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

[ . . . ]

**C. Exclusions**

This insurance does not cover:

[ . . . ]

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

[ . . . ]

11. Fines or penalties imposed for violation of federal or state law;

[ . . . ]

* * * * *

## Chronister's Tender to AMCO

24.    On or about January 27, 2021, Chronister tendered to AMCO the defense and indemnity of Chronister in relation to the Underlying Complaint.

25.    On or about February 2, 2021, AMCO first notified Chronister that it had reviewed the applicable Policies and determined that there was no defense or indemnity coverage in connection with the Underlying Complaint.  Thereafter, Chronister, through its claims consultant, notified AMCO in written correspondence that it was disputing AMCO's denial of coverage.  On April 13, 2021, AMCO issued a supplemental correspondence to Chronister that provided a more detailed explanation of its coverage decision and requested that Chronister withdraw its tender within 30 days.  Chronister neither responded nor withdrew its tender.

## COUNT I – DECLARATORY JUDGMENT
### (AMCO/Depositors Commercial General Liability Policy)

26.     AMCO and Depositors ("Plaintiffs") repeat and reallege the allegations in Paragraphs 1 through 25 as though fully set forth herein as paragraph 26.

27.     The endorsement to the CGL Policy titled, "Commercial General Liability Enhancement Endorsement Including Medical Payments," modified the definition of "bodily injury" as "bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time."  (Exhibits B through G).  The Underlying Complaint only alleges violations of a privacy statute, and contains no allegations related bodily injury, disability, sickness, disease or death.  Therefore, Plaintiffs owe no duty to provide coverage for bodily injury under Coverage A of the CGL Policy.

28.     The CGL Policy defines "personal and advertising injury," in relevant part, as an injury arising from an "oral or written publication, in any manner, of material that violates a person's right of privacy." (Exhibits B through G).  The Underlying Complaint contains no allegations that Chronister published its employees' biometric data to a third-party and, therefore, Plaintiffs owe no duty to provide coverage for personal and advertising injury under Coverage B of the CGL Policy.

29.     The endorsement contained in the CGL Policy titled, "Recording and Distribution of Material in Violation of Law Exclusion," excludes coverage for "any [ ] state [ ] statute [ ] that address, prohibits, or limits the [ ] dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information," precludes coverage for Chronister under the CGL Policy's Coverages A and B in connection with the Underlying Complaint because it arises directly from alleged violations of the Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq.*], which is an Illinois state statute that

regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information".  (Exhibits A through G).

30.     Additionally, and in the alternative, the endorsement contained in the CGL Policy titled, "Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability – With Limited Bodily Injury Exception," excludes coverage for any bodily injury or personal and advertising injury "arising out of any access to or disclosure of any person's [ ] confidential or personal information, including [ ] health information or any other type of nonpublic information," or "the [ ] inability to access [ ] electronic data."  This exclusion applies "even if damages are claimed for notification costs, [ ] or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information."  The Underlying Complaint arises directly from Chronister's access to its employees' personal and confidential biometric data and, therefore, precludes coverage of the Underlying Complaint to Chronister under the CGL Policy's Coverages A and B.  (Exhibits A through G).

31.     Additionally, and in the alternative, the endorsement contained in the GCL Policy titled, "Employment-Related Practices Exclusion," excludes coverage for bodily injury, property damage, or personal and advertising injury that arises from "employment-related practices, policies, acts or omissions, such as coercion [ ] [or] evaluation [ ] directed at that person."  This exclusion precludes coverage for Chronister in connection with the Underlying Complaint because the entire complaint is premised on Chronister's employment policy requiring its employees to provide digital scans of their fingerprints for its biometric timekeeping device.  (Exhibits A through G).

32.     Plaintiffs specifically deny any and all liability under the terms and provisions of the aforementioned CGL Policy, and each of its renewals, issued to Chronister, and insist that they are not obligated to defend or indemnify any judgment entered in the Underlying Suit and, by reason of such demand, Plaintiffs are in peril and in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

33.     An actual controversy exists between Plaintiffs and Chronister, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, the plaintiffs, AMCO INSURANCE COMPANY and DEPOSITORS INSURANCE COMPANY, respectfully pray that this Honorable Court:

A.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Commercial General Liability Policy;

B.     Declare that AMCO and Depositors owe no duty to defend or indemnify Chronister under the aforementioned Commercial General Liability Coverage policy, and each renewal, in connection with the Underlying Class Action Complaint filed in the Circuit Court of the Seventh Judicial District, Sangamon County, Illinois, under case no. 2020 L 000249; and

C.     Any and all other relief that this Court deems just and equitable under the facts and circumstances.

**COUNT II – DECLARATORY JUDGMENT (AMCO Commercial Umbrella Policy)**

34.     AMCO repeats and realleges the allegations in Paragraphs 1 through 25 as though fully set forth herein as paragraph 34.

35.     The AMCO Commercial Umbrella Liability Policy defines "Bodily Injury" as "physical injury, sickness or disease to a person and, if arising out of the foregoing, mental

anguish, mental injury, shock or humiliation, including death at any time resulting therefrom." (Exhibits H through M).  The Underlying Complaint only alleges violations of a privacy statute, and contains no allegations related physical injury, sickness, disease or death. Therefore, AMCO owes no duty to provide coverage for bodily injury under the AMCO Umbrella Policy.

36.     The AMCO Umbrella Policy defines "personal and advertising injury", in relevant part, as an injury arising out of an offense committed in the course of Chronister's business and involving an "oral or written publication of material that violates a person's right of privacy"   (Exhibits H through M).  The Underlying Complaint contains no allegations that Chronister published its employees' biometric data and, therefore, AMCO owes no duty to provide coverage for personal and advertising injury under the Umbrella Policy.

37.     Additionally, and in the alternative, the exclusion contained in the AMCO Umbrella Policy titled, "Recording and Distribution of Material in Violation of Law Exclusion," excludes coverage for any bodily injury, property damage, or personal and advertising injury that arises from any act or omission in violation of any state statute that "addresses, prohibits or limits the [ ] dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information." The Violations of Law Exclusion precludes coverage for Chronister under the AMCO Umbrella Policy in connection with the Underlying Complaint, because the underlying allegations arise directly from alleged violations of BIPA [740 ILCS 14/1 *et seq*.], which is an Illinois state statute that regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information".  (Exhibits A, H through M).

38.     Additionally, and in the alternative, the endorsement contained in the AMCO Umbrella Policy titled, "Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability – With Limited Bodily Injury Exception," excludes coverage for bodily injury or personal and advertising injury arising from "any access to or disclosure of any person's [ ] confidential or personal information, [ ] health information or any other type of nonpublic information," or "the [ ] inability to access [ ] electronic data."  This exclusion applies "even if damages are claimed for notification costs, [ ] or any other loss, cost or expense incurred by you or others" arising out of any access to or disclosure of any person's confidential or personal information.  The allegations of Underlying Complaint arise directly from Chronister's access to its employees' confidential and personal biometric data and, therefore, precludes coverage of the Underlying Complaint to Chronister under the AMCO Umbrella Policy's coverage.  (Exhibits A, H through M).

39.     Additionally, and in the alternative, the exclusions contained in the AMCO Umbrella Policy titled, "Employment-related Practices," excludes umbrella coverage for injury or damage, bodily injury or personal and advertising injury that arises from "employment-related practices, policies, acts or omissions, such as coercion [ ] [or] evaluation [ ] directed at that person."  This exclusion precludes coverage for Chronister under the AMCO Umbrella Policy in connection with the Underlying Complaint because the entire complaint is premised on Chronister's employment-related policy requiring its employees to provide digital scans of their fingerprints for Chronister's biometric timekeeping device.  (Exhibits A, H through M).

40.     AMCO specifically denies any and all liability under the terms and provisions of the aforementioned Umbrella Policy, and each of its renewals, issued to Chronister, and insists that it is not obligated to defend or indemnify any judgment entered

in the Underlying Suit and, by reason of such demand, AMCO is in peril and in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

41.     An actual controversy exists between AMCO and Chronister, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, the plaintiff, AMCO INSURANCE COMPANY, respectfully prays that this Honorable Court:

A.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the AMCO Commercial Umbrella Liability Policy, and each of its renewals;

B.     Declare that AMCO owes no duty to defend or indemnify Chronister under the aforementioned AMCO Commercial Umbrella Liability Policy, and each renewal, in connection with the Underlying Class Action Complaint filed in the Circuit Court of Seventh Judicial District, Sangamon County, Illinois, under case no. 2020 L 000249; and

C.     And any and all other relief that this Court deems just and equitable under the facts and circumstances.

## COUNT III – DECLARATORY JUDGMENT
### (AMCO Workers Compensation and Employers Liability Policy)

42.     AMCO repeats and realleges the allegations in Paragraphs 1 through 25 as though fully set forth herein as paragraph 42.

43.     Part One of the AMCO Workers Compensation and Employers Liability Policy is titled, "Workers Compensation Insurance," and provides coverage for workers compensation claims.  The Underlying Complaint does not arise from a workers compensation claim and,

therefore, AMCO owes no duty to provide coverage for the Underlying Complaint under Part One of the WCEL Policy.

44. Part Two of the AMCO WCEL Policy is titled, "Employers Liability Insurance," and provides coverage for bodily injury by accident, disease or resulting death arising out of the course of the injured employee's employment by Chronister. The Underlying Complaint alleges only privacy-related injuries, and does not allege any bodily injuries. Therefore, AMCO owes no duty to provide coverage under Part Two of the WCEL Policy for the Underlying Complaint.

45. Additionally, and in the alternative, Part Two of the AMCO WCEL Policy excludes coverage for "damages arising out of coercion [ ] and evaluation [ ] of any employee, or any personnel practices, policies, acts or omissions." The allegations of the Underlying Complaint are premised on Chronister's employment-related practice and policy requiring its employees to provide digital scans of their fingerprints for Chronister's biometric timekeeping device and, therefore, this exclusion precludes coverage for Chronister under Part Two of the WCEL Policy for the Underlying Complaint. (Exhibits A, N and O.)

46. Additionally, and in the alternative, Part Two of the AMCO WCEL Policy excludes coverage for any "fines or penalties imposed for violation of federal or state law." The Underlying Complaint seeks to recover the statutory penalties and damages imposed for violations of BIPA and, therefore, AMCO owes no duty to defend or indemnify Chronister for the Underlying Complaint under Part Two of the WCEL Policy. (Exhibits A, N and O.)

47. AMCO specifically denies any and all liability under the terms and provisions of the aforementioned WCEL Policy, and its renewal, issued to Chronister, and insists that it is not obligated to defend or indemnify any judgment entered in the

Underlying Suit and, by reason of such demand, AMCO is in peril and in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

48.     An actual controversy exists between AMCO and Chronister, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, the plaintiff, AMCO INSURANCE COMPANY, respectfully prays that this Honorable Court:

A. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the AMCO Workers Compensation and Employers Liability Policy;

B. Declare that AMCO owes no duty to defend or indemnify Chronister under the aforementioned Workers Compensation and Employers Liability policy, and the renewal, in connection with the Underlying Class Action Complaint filed in the Circuit Court of the Seventh Judicial District, Sangamon County, Illinois, under case no. 2020 L 000249; and

C. Any and all other relief that this Court deems just and equitable under the facts and circumstances.

AMCO INSURANCE COMPANY and
DEPOSITORS INSURANCE COMPANY,


By:    s/Matthew R. Bloom_____
            One of Their Attorneys

Matthew R. Bloom
MEAGHER & GEER, P.L.L.P.
216 N. Jefferson Street, Suite 100
Chicago, Illinois 60661
(312) 463-1045
Attorney No. 6292410
Our File No.:    56597-00121
mbloom@meagher.com